```
                                                              ┌─────────────────────────────────┐
                                                              │ USDC SDNY                       │
                                                              │ DOCUMENT                        │
UNITED STATES DISTRICT COURT                                  │ ELECTRONICALLY FILED            │
SOUTHERN DISTRICT OF NEW YORK                                 │ DOC #: _____         │
                                                              │ DATE FILED: 8/11/2021           │
----------------------------------------------------------- X └─────────────────────────────────┘
                                           :
NICHOLAS MONIODES,                         :
                                           :
                              Plaintiff,   :              1:20-cv-5648-GHW
                                           :
                  -against-                :              MEMORANDUM
                                           :              OPINION AND ORDER
AUTONOMY CAPITAL (JERSEY) LP,              :
AUTONOMY AMERICAS LLC d/b/a                :
AUTONOMY CAPITAL, ROBERT GIBBINS,          :
and IVAN RITOSSA, in their individual and  :
professional capacities,                   :
                                           :
                              Defendants.  :
                                           :
----------------------------------------------------------- X
```

GREGORY H. WOODS, United States District Judge:

I.     INTRODUCTION

Plaintiff Nicholas Moniodes ("Plaintiff") alleges that he was wrongfully terminated by

Defendants Autonomy Capital (Jersey) LP, Autonomy Americas LLC d/b/a Autonomy Capital,

Robert Gibbins, and Ivan Ritossa ("Defendants") in retaliation for providing information to one of

Defendants' employees, who relayed that information by telephone to the Securities and Exchange

Commission.  Plaintiff argues that by acting jointly with Defendants' employee to provide

information to the SEC by telephone, he qualified for whistleblower protection under the Dodd–

Frank Wall Street Reform and Consumer Protection Act ("Dodd–Frank").

Defendants have brought a motion to dismiss under Rule 12(b)(2) and Rule 12(b)(6),

arguing, *inter alia*, that Plaintiff has not alleged facts that would qualify him as a whistleblower under

Dodd–Frank.  The Court agrees.  In order to state a claim for employment retaliation under Dodd–

Frank, an individual must meet the statute's definition of a whistleblower.  That requires an

individual to provide information to the SEC by one of the methods listed in Exchange Act Rule

21F–9(a).  Because Plaintiff has not alleged that he provided information by one of those methods,

he has not alleged that he was a whistleblower under Dodd–Frank.  Defendants' motion to dismiss

Plaintiff's claim under Rule 12(b)(6) is therefore GRANTED.

## II.     BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history in this case.

The Court nonetheless recapitulates the aspects of the case relevant to this motion.

### A.     Facts[1]

Plaintiff is an IT professional with more than thirty years of experience in the financial

services industry.  Dkt. No. 34, Pl.'s First Am. Compl. ("Compl.") ¶ 1.  Defendant Autonomy

Capital (Jersey) LP ("Autonomy Jersey") is a limited partnership organized under the laws of Jersey

and with its headquarters and principal place of business in Jersey.  *Id.* ¶ 11.  Defendant Autonomy

Americas LLC d/b/a Autonomy Capital ("Autonomy Americas") is a wholly owned subsidiary of

Autonomy Jersey with its headquarters in New York.  *Id.* ¶ 12.  Defendants Robert Gibbins and

Ivan Ritossa "owned and operated" Autonomy Jersey and Autonomy Americas during the time

period relevant to this case.  *Id.* ¶ 33.

Plaintiff was hired by Autonomy Americas in 2014.  *Id.* ¶¶ 30, 47.  Plaintiff alleges, however,

that he worked for both Autonomy Americas and Autonomy Jersey (collectively, "Autonomy").[2]  *Id.*

¶ 30.  From 2014 until 2018, Plaintiff "conduct[ed] a comprehensive audit of the technology and

---

[1] The facts are drawn from Plaintiff's amended complaint, Dkt. No. 34, and are accepted as true for the purposes of this motion to dismiss.  *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Plaintiff alleges that Autonomy Jersey and Autonomy Americas operated as a single company, *see* Compl. ¶ 31, and argues that this establishes the Court's personal jurisdiction over Autonomy Jersey, *see* Dkt. No. 47, Pl.'s Opp'n to Defs.' Mot. to Dismiss, 19–21.  Because the Court does not reach the question of whether it may exercise jurisdiction over Autonomy Jersey, the Court takes no position on whether Autonomy Jersey and Autonomy Americas operated as a single entity in any legal sense.  The Court nonetheless, in this opinion and for the sake of convenience, sometimes follows Plaintiff's convention of referring to Autonomy Jersey, Autonomy Americas, and any other associated entities collectively as "Autonomy."  This is purely stylistic.

business processes at [Autonomy]." *Id.* ¶ 47.  Based on that audit, Plaintiff "ma[de]

recommendations for strategic enhancements across [Autonomy]'s trading, settlement/clearing, and

technology platforms" and "institute[d] . . . projects to successfully address certain critical issues he

had identified." *Id.* ¶ 48.

  In 2018, Plaintiff "was promoted to be the Co-Head of Technology and was responsible for

[Autonomy]'s Technology Infrastructure and Cybersecurity teams." *Id.* ¶ 50.  In that role, Plaintiff

"was responsible for overseeing [Autonomy]'s cybersecurity efforts to ensure that they were in

compliance with applicable securities laws and regulations." *Id.* ¶ 55.  In 2019, Plaintiff determined

that Autonomy was not adequately securing its customers' data and the data on its employees'

mobile devices. *Id.* ¶¶ 2, 56, 58.  Plaintiff believed that Autonomy's data security practices violated

SEC rules. *Id.* ¶ 2.  Plaintiff communicated that belief to Autonomy's senior management, but

Autonomy did not adequately remedy its security practices. *Id.* ¶¶ 59–60.

  In mid-2019, two Autonomy employees—Jason Gordon and David Cuddihy, heads of

Compliance and Software Development, respectively—asked Plaintiff to join them on a conference

call with the SEC. *Id.* ¶¶ 59, 61–62.  Mr. Gordon and Mr. Cuddihy expected the SEC to ask

questions that they would not be able to answer because they lacked Plaintiff's technical

understanding of Autonomy's IT systems. *Id.* ¶¶ 62–63.  However, because Mr. Gordon and Mr.

Cuddihy considered Plaintiff a consultant rather than a regular employee of Autonomy, they did not

want Plaintiff to answer the SEC's questions himself. *Id.* ¶ 62.  Instead, Mr. Cuddihy posed certain

of the SEC's questions to Plaintiff and repeated Plaintiff's answers verbatim to the SEC. *Id.* ¶¶ 63–

64.  Among other things, Mr. Cuddihy repeated to the SEC Plaintiff's assessment that Autonomy

"was not complying with relevant SEC rules and regulations" because it was not adequately securing

its own and its investors' data. *Id.* ¶ 67.

  Shortly after the call, the SEC cited Autonomy for its failure to adequately secure its data. *Id.*

¶ 70.  Autonomy promised the SEC that it would begin to remedy that failure by the end of 2019.

*Id.* ¶ 73.  Plaintiff was responsible for leading that effort.  *Id.* ¶ 74.

Over the next several months, Defendant Robert Gibbins—then Autonomy's CEO—

repeatedly expressed dissatisfaction with Plaintiff's handling of Autonomy's effort to remedy the

data security issue.  *Id.* ¶¶ 80–86, 89.  Finally, in April 2020, Autonomy "abruptly told [Plaintiff] that

his employment was being . . . terminated because [Autonomy] . . . had no further use for his

services."  *Id.* ¶ 97.  After terminating Plaintiff's employment, Autonomy "put a stop to most of the

cybersecurity regulatory initiatives that [Plaintiff] had been in the midst of completing."  *Id.* ¶ 98.

### B.     Procedural History

Plaintiff sued Defendants on July 21, 2020.  *See* Dkt. No. 1, Pl.'s (Initial) Compl.  Defendants

filed a motion to dismiss Plaintiff's initial complaint under Rule 12(b)(1), Rule 12(b)(2), and Rule

12(b)(6) on October 30, 2020.  *See* Dkt. No. 29.  Rather than contest that motion to dismiss, Plaintiff

filed an amended complaint on November 20, 2020.  *See* Dkt. No. 34.

Defendants filed a motion to dismiss Plaintiff's amended complaint under Rule 12(b)(2) and

Rule 12(b)(6).  *See* Dkt. No. 42, Defs.' Mot. to Dismiss; Dkt. No. 43, Defs.' Br. in Supp. ("Defs.'

Supp.").  In their brief, Defendants argue that Plaintiff has failed to allege facts that meet the

statutory and regulatory requirements for whistleblower protection under Dodd–Frank and that the

Court lacks personal jurisdiction over Defendant Autonomy Jersey.  Plaintiff filed an opposition

brief rejecting those arguments, *see* Dkt. No. 47 ("Pl.'s Opp'n"), and Defendants filed a reply brief,

*see* Dkt. No. 49 ("Defs.' Reply").

## III.    LEGAL STANDARD

A complaint need contain only "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, a defendant may move to dismiss a

plaintiff's claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  In deciding a motion to dismiss under Rule 12(b)(6), courts accept as true all well-pleaded factual allegations and draw all inferences in the plaintiff's favor.  *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809–10 (2d Cir. 2019) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)); *Chase Grp. All. LLC v. City of New York Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion."  *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012)).  "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ."  *Twombly*, 550 U.S. at 556.

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint states a plausible claim is a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV.   DISCUSSION

### A.  Retaliation Protection under Dodd–Frank

The 2010 Dodd–Frank Wall Street Reform and Consumer Protection Act ("Dodd–Frank")

provides retaliation protection to employees who report violations of the securities laws to the SEC.

*See* 15 U.S.C. § 78u–6(h)(1).  In order to qualify as a "whistleblower" entitled to protection under the

Act, an employee must meet certain statutory requirements:  she must possess information about

violations of the securities laws; she must provide that information to the SEC; and, most relevant to

this case, she must provide that information to the SEC in a manner established by SEC rules. *Id.*

§ 78u–6(a)(6) ("The term 'whistleblower' means any individual who provides . . . information

relating to a violation of the securities laws to the Commission, in a manner established, by rule or

regulation, by the Commission.").  Under the version of those rules in force during the period

relevant to this case, in order to receive retaliation protection as a whistleblower, an individual had to

provide information to the SEC via mail, fax, or the Commission's website.  *See* 17 C.F.R.

§ 240.21F–9(a) (2020).  No other manner would do.

### 1.   Dodd–Frank's Whistleblower Program

> Passed in the wake of the 2008 financial crisis, Dodd–Frank aimed to "promote the
> financial stability of the United States by improving accountability and transparency in
> the financial system."  Pub. L. No. 111-203, 124 Stat. 1376 (2010).
>     Dodd–Frank responded to numerous perceived shortcomings in financial
> regulation.  Among them was the SEC's need for additional "power, assistance and
> money at its disposal" to regulate securities markets.  S. Rep. No. 111–176, pp. 36, 37
> (2010).  To assist the Commission "in identifying securities law violations," the Act
> established "a new, robust whistleblower program designed to motivate people who
> know of securities law violations to tell the SEC."  *Id.* at 38.

*Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 773 (2018).

Dodd–Frank benefits whistleblowers in three ways.  *See generally id.* at 774–75.  First, it

guarantees confidentiality:  whistleblowers are assured that neither their employers nor any other

member of the public will find out that they have spoken to the SEC.  *See* 15 U.S.C. § 78u–6(h)(2).

Second, even if an employer does learn that an employee has spoken to the SEC, Dodd–Frank

shields that employee from retaliation.  *See* 15 U.S.C. § 78u–6(h)(1).  Third, if the information a

whistleblower has given to the SEC leads to a successful enforcement action, Dodd–Frank entitles

the whistleblower to a monetary award.  *See* 15 U.S.C. § 78u–6(b).

### 2.        Qualifying as a Dodd–Frank Whistleblower

However, to be eligible for any of those three benefits, an individual must first meet Dodd–

Frank's definition of a "whistleblower."  *See Digital Realty*, 138 S. Ct. at 777 (holding that the statute's

definition of whistleblower applies throughout the statute).  Dodd–Frank defines a "whistleblower"

as "any individual who provides, or 2 or more individuals acting jointly who provide, information

relating to a violation of the securities laws to the [Securities and Exchange] Commission, in a

manner established, by rule or regulation, by the Commission."  15 U.S.C. § 78u–6(a)(6).  That

definition creates three requirements:  (1) that an individual possess information relating to a

violation of the securities laws; (2) that the information be provided to the SEC itself, not merely

internally; and—importantly—(3) that the individual provide the information "in a manner

established . . . by the Commission."  *Id.*

The SEC first established that "manner" in rules it promulgated on July 13, 2011.  *See*

Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34,300 (June 13, 2011) (to be

codified at 17 C.F.R. pts. 240, 249).  Those rules dictate the outcome in this case.  They were,

however, substantially amended at the end of 2020, so the interpretation of those rules adopted by

the Court in this opinion will be of little relevance to future cases governed by the new rules. [3]

One of the original whistleblower rules, 17 C.F.R. § 240.21F–9 ("F–9"), stated:

---

[3] The SEC's whistleblower rules were amended effective December 2020, *see* Whistleblower Program Rules, 85 Fed. Reg. 70,898 (Nov. 5, 2020), so all references in this opinion to the Code of Federal Regulations are to the version in effect in April 2020, when the relevant conduct occurred, unless otherwise specified.

> To be considered a whistleblower under Section 21F of the Exchange Act (15 U.S.C.
> [§] 78u–6(h)), you *must* submit your information about a possible securities law
> violation by either of these methods:
>> (1) Online, through the Commission's Web site . . . ; or
>> (2) By mailing or faxing a Form TCR . . . to the SEC Office of the
> Whistleblower . . . .

17 C.F.R. § 240.21F–9(a) (emphasis added).  The mandatory language of that rule ("you must")

makes clear that an individual could not be considered a whistleblower—and thus could not receive

the protections and incentives afforded to a whistleblower under § 78u–6—unless she provided

information about a violation of the securities laws to the SEC via mail, fax, or the SEC's website.

That requirement has been recognized by both the Solicitor General and the Supreme Court.

In his brief as amicus curiae in *Digital Realty*, the Solicitor General recognized that "[t]he 'manner

established' [pursuant to § 78u–6(a)(6)] by Commission rule is by reporting '[o]nline, through the

Commission's Web site,' or '[b]y mailing or faxing a' specified form 'to the SEC Office of the

Whistleblower.'"  Brief for the United States as Amicus Curiae Supporting Respondent at 18, *Digital

Realty*, 138 S. Ct. 767 (No. 16-1276), 2017 WL 4676666 (third and fourth alterations in original)

(quoting 17 C.F.R. § 240.21F–9(a)).  Therefore, the Solicitor General reasoned, if the whistleblower

definition in § 78u–6(a)(6) applied to the anti-retaliation provisions in subsection (h)(1), an employee

would be ineligible for retaliation protection "if the employee had not previously reported to the

Commission online or through the specified written form."  *Id.* at 20 (citing § 240.21F–9(a)).  The

Supreme Court accepted the Solicitor General's reasoning, and further reasoned that such an

outcome was consistent with the purposes of the underlying legislation.  *See Digital Realty*, 138 S. Ct.

at 781 (noting that retaliation protection requires compliance with F–9's reporting methods but that

"[n]othing in today's opinion prevents the agency from enumerating additional means of SEC

reporting").

The two lower courts that have examined this issue since *Digital Realty* have been persuaded

by the Solicitor General and Supreme Court's view.  *See MiMedx Grp., Inc. v. Fox*, No. 16 CV 11715,

2018 WL 4236373, at *2 (N.D. Ill. June 6, 2018); *Thomas v. Tyco Int'l Mgmt. Co.*, 416 F. Supp. 3d 1340,

1367 (S.D. Fla. 2019).  The court in *MiMedx* considered whether to dismiss a Dodd–Frank

retaliation claim in which the complainant had alleged that he had provided information to the SEC

but not by one of the methods listed under Rule F–9(a).  *See* 2018 WL 4236373, at *2.  The court

dismissed the claim, reasoning that "the mandatory language of § 240.21F–9(a)," the fact that "the

regulation specifically references § 78u–6(h)," and "the [Supreme] Court's reasoning in *Digital Realty*"

all strongly suggest that the requirements of F–9(a) applied to an individual bringing a claim for

retaliation under Dodd–Frank.  *Id.*  The court in *Thomas* was likewise persuaded by the Supreme

Court's indication that an employee could qualify for retaliation protection only by providing

information by one of the methods listed under Rule F–9(a).  *See* 416 F. Supp. 3d at 1367 (citing

*Digital Realty*, 138 S. Ct. at 781).

### 3.     *Digital Realty* and Rule F–2

Although the unambiguous mandatory language of Rule F–9(a) disposes of Plaintiff's claim,

the Court will briefly discuss an alternative interpretation of § 78u–6 and the relevant SEC rules

raised by Plaintiff in briefing on this motion.  *See* Pl.'s Opp'n at 12–15.  That interpretation, first

articulated by the SEC itself in 2015, insists that, despite the unambiguous references in Rule F–9(a)

to both § 78u–6 in general and subsection (h) in particular, Rule F–9(a) did not and was never meant

to govern the manner in which an individual must provide information to the SEC for the purposes

of Dodd–Frank's anti-retaliation protections in subsection (h)(1).  Instead, under that interpretation,

the requirements to be considered a whistleblower under § 78u–6(h)(1) were defined only by Rule

F–2(b)(1), which—in the SEC's 2015 reading—permitted an individual to qualify as a whistleblower

even if she reported information by a method not listed under Rule F–9(a) or to an organization

other than the SEC.  Although that interpretation has certain textual and policy considerations to

recommend it, it is—as the government itself ultimately recognized in the Solicitor General's

briefing to the Supreme Court—untenable after *Digital Realty*.  Rule F–2(b)(1) defined a

whistleblower by reference to § 78u–6(h)(1)(A), which, as *Digital Realty* made clear, incorporated the

requirements of the statute's whistleblower definition, including those of Rule F–9(a).  Plaintiff

therefore cannot employ Rule F–2(b)(1) to circumvent the unambiguous manner requirements of

Rule F–9(a).

Some history is in order.  Before the Supreme Court decided *Digital Realty* in 2018, the SEC

interpreted the definition of "whistleblower" in § 78u–6(a)(6) to apply only to the statute's

whistleblower award provisions, not its anti-retaliation provisions.  *See* Brief of the SEC, Amicus

Curiae in Support of the Appellee (the "SEC's Amicus Br.") at 28, *Somers v. Digital Realty Tr., Inc.*, 850

F.3d 1045 (9th Cir. 2017) (No. 15-17352), 2016 WL 3088310.  In the SEC's view, the word

"whistleblower" in the statute's anti-retaliation provisions was defined only by Rule F–2(b)(1), which

it had issued under the statute's general delegation of rulemaking authority in § 78u–6(j) rather than

under the specific delegation of rulemaking authority in the statute's whistleblower definition.  *See id.*

Assuming that the statute's whistleblower definition did not apply to its anti-retaliation provisions

and that the statute authorized the SEC to issue rules directly interpreting those provisions, the SEC

reasoned that it could interpret those provisions unconstrained by the plain language of § 78u–

6(a)(6).  *See id.*  It therefore believed that it could interpret the anti-retaliation provisions to cover

even individuals who did not "provide . . . information . . . to the Commission," but merely reported

it internally.  *See id.*

Just as the SEC understood § 78u–6(a)(6) as a specialized definition that applied only to

§ 78u–6's award and confidentiality provisions, it likewise "understood Rule 21F–9(a) as a

procedural rule that applies only to help determine an individual's status as a whistleblower for the

purposes of [§ 78u–6]'s award and confidentiality provisions."  Interpretation of the SEC's

Whistleblower Rules Under Section 21F of the Securities Exchange Act of 1934 ("2015 Interpretive

Release"), 80 Fed. Reg. 47,829, 47,830 (Aug. 10, 2015).  Under that understanding of the statute and

rules, "Rule 21F–2(b)(1) alone controls the reporting methods that will qualify an individual as a

whistleblower for the retaliation provisions."  *Id.*  Rule F–2(b)(1), under the SEC's 2015

interpretation, imposed less stringent requirements than F–9(a):  under F–2(b)(1), a whistleblower

could provide information in manners other than those listed in F–9(a) and to entities other than the

SEC.  *Id.*

The Supreme Court roundly rejected the SEC's reading of § 78u–6 in *Digital Realty*.  The

respondent in that case alleged that he had been fired after reporting information about a possible

violation of the securities laws to supervisors at his company.  *Digital Realty*, 138 S. Ct. at 776.  The

respondent had never reported that information to the SEC, but nonetheless brought suit for

whistleblower retaliation under Dodd–Frank.  *Id.*  The Supreme Court held that the respondent's

claim should have been dismissed.  *Id.* at 778.  Reasoning from basic principles of statutory

construction, the Court held that the definition of "whistleblower" contained in the statute's

definitions section applied throughout the section, including to the anti-retaliation provisions.  *Id.* at

777.  And since the definition of "whistleblower" clearly required that an individual

"provide . . . information . . . to the Commission," the SEC could not interpret it to cover

individuals such as the respondent, who had only provided information to internal supervisors.  *Id.*

at 782 ("The statute's unambiguous whistleblower definition . . . precludes the Commission from

more expansively interpreting that term.").

The Supreme Court did not expressly strike down Rule F–2(b)(1) except to the extent that

it would permit individuals to qualify as whistleblowers without providing information to the SEC.

*Accord MiMedx*, 2018 WL 4236373, at *2 ("[T]he Court held that [Rule F–2(b)(1)] was inconsistent

with the clear language of the Act to the extent it allowed employees who reported information

internally to enjoy the Act's protections . . . .").  However, the holding of *Digital Realty* does not leave

behind a conflict between the apparently permissive F–2(b)(1) and the comparatively stringent F–9(a). [4]  That is because applying the statute's definition of "whistleblower" to § 78u–6(h)(1)(A) causes F–2(b)(1) to incorporate the requirements of F–9(a).

That result was obvious to both the government and the Supreme Court.  In his brief before the Supreme Court as amicus curiae, the Solicitor General wrote that if the Supreme Court held—as it ultimately did—that the statute's whistleblower definition applied to its anti-retaliation provisions, whistleblowers seeking protection from retaliation would have to comply with the procedures for providing information to the Commission listed under Rule F–9(a).  Brief for the United States at 20–21, *Digital Realty*, 138 S. Ct. 767.  That, the Solicitor General warned, would permit an employer to fire an employee for testifying in an SEC enforcement action if that employee had not also provided information to the SEC in one of the manners listed under Rule F–9(a).  *Id.*  The Supreme Court did not challenge the Solicitor General's conclusion, but instead countered that the consequences would not be so dire, because "the statute expressly delegates authority to the SEC to establish the 'manner' in which information may be provided to the Commission . . . .  Nothing in today's opinion prevents the agency from enumerating additional means of SEC reporting . . . ." *Digital Realty*, 138 S. Ct. at 781. [5]

That passage is, admittedly, dictum.  *Accord MiMedx*, 2018 WL 4236373, at *2 (finding the passage persuasive but not identifying it as binding precedent); *Thomas*, 416 F. Supp. 3d at 1367

---

[4] That conflict arguably arises even if the statute's whistleblower definition is not applied to its anti-retaliation provisions, since the language of F–9(a) does not restrict itself to sections in which that definition applies.  *See, e.g.,* 2015 Interpretive Release at 47,830 (the SEC "appreciate[s] that if read in isolation Rule 21F-9(a) could be construed to require that an individual must report to the Commission before he or she will qualify as a whistleblower eligible for the employment retaliation protections provided by Section 21F").  F–9(a) can just as easily, and perhaps more naturally, be read to interpret § 78u–6 directly, through the general delegation of rulemaking authority in § 78u–6(j).  *See* F–9(a) ("To be considered a whistleblower under [§ 78u–6] . . . .").  The Supreme Court's decision in *Digital Realty* nonetheless makes clear that—even under the United States' reading of Rule F–9(a) as a gloss only on the statute's whistleblower definition, *see* Brief for the United States at 18, *Digital Realty*, 138 S. Ct. 767—Rule F–9(a) applies to the anti-retaliation provisions.
[5] Indeed, as discussed below, after the Supreme Court issued its opinion in *Digital Realty*, the SEC substantially revised its whistleblower regulations to avoid the hypothetical posed by the Solicitor General.  Of course, those revised rules can have no bearing on the Court's reading of the unambiguous rules that preceded them.

(same).  The question in *Digital Realty* was whether an individual has to provide information to the

SEC to be a whistleblower for purposes of Dodd–Frank's anti-retaliation provisions.  Since the

respondent had not provided information to the SEC, it made no difference whether he would have

been required to provide that information pursuant to the methods listed under Rule F–9(a).

The passage does, however, correctly lay out the consequences of the Supreme Court's

decision.  When the statute's whistleblower definition is applied to § 78u–6(h)(1), Rule F–2(b)(1)(ii)

incorporates the requirements of Rule F–9(a).  Under Rule F–2(b)(1):

> For the purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of
> the Exchange Act (15 U.S.C. [§] 78u–6(h)(1)), you are a whistleblower if:
>      (i) You possess a reasonable belief that the information you are providing
> relates to a possible securities law violation . . . and;
>      (ii) You provide that information in a manner described in Section
> 21F(h)(1)(A) of the Exchange Act (15 U.S.C. [§] 78u–6(h)(1)(A)).

17 C.F.R. § 240.21F–2(b).  Rather than directly state the "manner" in which an individual must

provide information to the SEC, subsection (b)(1) allows information to be provided in any of the

manners listed in § 78u–6(h)(1)(A)—i.e., through

> any lawful act done by the *whistleblower* -
>      (i) in providing information to the Commission in accordance with this
> section;
>      (ii) in initiating, testifying in, or assisting in any investigation or judicial or
> administrative action of the Commission based upon or related to such information;
> or
>      (iii) in making disclosures that are required or protected under the Sarbanes-
> Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-1(m) of
> this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to
> the jurisdiction of the Commission.

15 U.S.C. § 78u–6(h)(1)(A) (emphasis added).[6]

As *Digital Realty* made clear, the word "whistleblower" in § 78u–6(h)(1)(A) incorporated the requirements of the statute's general whistleblower definition. *See Digital Realty*, 138 S. Ct. at 777 (the statute's definition of whistleblower applies throughout the statute). Those requirements included, as the Solicitor General conceded, the manner requirements set forth in Rule F–9(a). *See* Brief for the United States at 18, *Digital Realty*, 138 S. Ct. 767. Therefore, when Rule F–2(b)(1) incorporated by reference the manners listed in § 78u–6(h)(1)(A), it incorporated by extension the requirements of the statute's whistleblower definition, including those set forth in Rule F–9(a). As a result, there was simply no conflict between the rules: under either rule, an individual seeking protection from retaliation was required to provide information in one of the manners listed under Rule F–9(a).

Recognizing that the Supreme Court's interpretation of § 78u–6 would—as the Supreme Court itself predicted—require all whistleblowers to comply with the mandatory language of Rule F–9(a), the SEC amended its whistleblower rules in November 2020 to make qualifying for retaliation protection easier. *See* Whistleblower Program Rules, 85 Fed. Reg. 70,898 (Nov. 5, 2020) (to be codified at 17 C.F.R. pts. 240, 249). The new Rule F–9(a) permits individuals to submit information "[b]y any . . . method that the Commission may expressly designate on its website." 17 C.F.R. § 240.21F–9(a)(3) (2021). More significantly, the new Rule F–9(a) unambiguously applies—

---

[6] Subsection (b)(1) differed from subsections (a)(1) and (a)(2) in that respect. Rule F–2 provided two routes for an individual to qualify as a whistleblower, one under subsection (a)(1) and the other under subsection (b)(1). Under subsection (a)(1), "[y]ou are a whistleblower if . . . you provide the Commission with information pursuant to the procedures set forth in § 240.21F–9(a) of this chapter, and the information relates to a possible violation of the Federal securities laws . . . ." Subsection (a)(2) further provided that "[t]o be eligible for an award, you must submit original information to the Commission in accordance with the procedures and conditions described in §§ 240.21F–4, 240.21F–8, and 240.21F–9 of this chapter." Each paragraph signaled which conditions in other rules in § 240.21 had to be met to qualify an individual as a whistleblower for the purposes of that paragraph. Subsection (a)(1) required that information be provided pursuant to F–9(a). Subsection (a)(2) required that information be provided pursuant not only to F–9 but also to F–4 and F–8. Subsection (b)(1) omitted any direct reference to F–9—which might, under the canon of *expressio unius*, have suggested that a (b)(1) whistleblower need not have complied with F–9. But under the *Digital Realty* reading of § 78u–6, subsection (b)(1)(ii) clearly incorporated F–9 through the statute's whistleblower definition at § 78u–6(a)(6).

14

as the SEC had urged before *Digital Realty*—only to the award and confidentiality provisions of

§ 78u–6.  *See* § 240.21F–9(a) (2021) (referencing only subsections (b) and (c) of § 240.21F–2 (2021),

which correspond to the award and confidentiality provisions of § 78u–6).  Because of that

amendment, the Court's decision in this case is no guide for future cases that deal with conduct that

occurred after the new rules took effect on December 7, 2020.  *See* 85 Fed. Reg. 70,898, 70,898.

### B.      Application

Plaintiff has failed to state a claim for retaliation under Dodd–Frank.  Dodd–Frank requires

that an individual asserting a claim for retaliation first qualify as a whistleblower.  To qualify as a

whistleblower, an individual—or two individuals acting jointly—must provide information to the

SEC in a manner consistent with Rule F–9(a).  Rule F–9(a) requires that information be provided via

mail, fax, or the SEC's website.  Plaintiff has alleged that he provided information to the SEC jointly

with an Autonomy employee on a conference call.[7]  Compl. ¶ 66.  Because a conference call is not

one of the methods prescribed by Rule F–9(a), Plaintiff has not alleged that he was a whistleblower

under Dodd–Frank, and therefore has not stated a claim for retaliation.

Because Plaintiff has only asserted one claim, and because that claim must be dismissed,

Defendants' motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction over Autonomy

Jersey is moot.

## V.     AMENDMENT

The Court denies Plaintiff leave to amend his complaint because further amendment would

be futile.  In this Circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave

to replead."  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ.

P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  However,

---

[7] The Court takes no position on whether Plaintiff and Mr. Cuddihy were, in fact, acting jointly, or whether Plaintiff was an employee of Autonomy America, Autonomy Jersey, both, or neither.  The Court passes over those issues because Plaintiff's failure to allege facts qualifying him as a Dodd–Frank whistleblower disposes of his claim.

"[r]easons for a proper denial of leave to amend include undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (citation omitted). "A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that where the "problem with [a complaint] is substantive [and] better pleading will not cure it," leave to amend should be denied as futile).

Although Plaintiff has requested leave to amend, he has not suggested that he could allege facts showing that he provided information to the SEC in a manner prescribed by Rule F–9(a). *See* Pl.'s Opp'n at 2 n.1. According to his complaint, his sole communication with the SEC was by telephone, through Mr. Cuddihy. *See* Compl. ¶¶ 63–64. He has not suggested otherwise in briefing on this motion. *See* Pl.'s Opp'n at 17. The Court therefore concludes that Plaintiff is unable to amend his complaint to state a claim for retaliation under Dodd–Frank and that granting him leave to amend would be futile.

## VI.    CONCLUSION

Because Plaintiff has alleged that he provided information to the SEC by telephone, not by one of the means listed under Exchange Act Rule 21F–9(a), Plaintiff has failed to allege that he was a whistleblower under Dodd–Frank and thus has failed to state a claim for retaliation. Defendants' motion to dismiss under Rule 12(b)(6) is therefore GRANTED. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 42, enter judgment for Defendants, and close this case.

SO ORDERED.

Dated: August 11, 2021
New York, New York

GREGORY H. WOODS
United States District Judge

16